UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARK WILLEMS,

           Plaintiff,

v.                                                       Case No. 13-C-130

CAROLYN COLVIN,

           Defendant.

## DECISION AND ORDER

      Mark Willems applied for disability insurance benefits and was denied by the Social Security Agency after a review of his records and a hearing before an administrative law judge (ALJ). He then brought this action challenging the Commissioner's decision. For the reasons given below, the decision of the Commissioner will be remanded for further proceedings.

**I. Background**

      Mark Willems suffered from chronic pain and fatigue due to fibromyalgia, and these impairments (among others) eventually resulted in a loss of mobility and the need to use a walker and other aids such as a shower chair. He also suffered sleep disturbances that required the use of oxygen, and these disturbances resulted in further fatigue and problems staying awake during the day. In 2009 the Veterans Administration awarded him an 80 percent disability benefit, which was later increased to 100 percent. (Tr. 76.) He also suffered from mental issues including anxiety, stress disorder and depression. Various treating providers assessed him with GAF (global

assessment of functioning) scores ranging between 40 and 50, which are indicative of serious problems. (Tr. 703-04, 464, 510.) At various times, Willems took up to 15 different medications, some of which added to his fatigue.

The ALJ denied disability benefits after finding Willems possessed the residual functional capacity (RFC) to perform sedentary and unskilled work. (Tr. 37.)

**II. Analysis**

A district court will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue,* 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007).

**A. Determination of the Bureau of Veterans Affairs**

Plaintiff first argues that the ALJ erred by failing to consider the VA's determination of disability. The ALJ's decision did not mention the VA's determination of disability at all. The government concedes that an ALJ must "consider" decisions of other government branches, SSR 06-03p, but argues that an ALJ is not required to put that "consideration" in writing.

The Seventh Circuit has stated that a VA determination of disability is entitled to some weight, but it has never said that the ALJ must explain what weight he gave it and why he rejected its conclusions.[1] Here, the ALJ considered the same limitations that the VA did; in fact, the ALJ

---

[1] In *Varga v. Colvin,* 2011 WL 442268, *17 (E.D. Wis., February 02, 2011), I found error in these circumstances, but that was not based on Seventh Circuit precedent.

considered even *more* limitations than the VA did, including anxiety and headaches. Thus, requiring the ALJ to explicitly set forth why he rejected the VA's conclusion could be considered a hypertechnical exercise because the ALJ's conclusions about the Plaintiff's disability are evident from the opinion itself. Thus, I do not find error under these circumstances.

Although the Seventh Circuit has not explicitly stated that an ALJ must explain his rejection of a VA disability determination, other circuits have, and the agency's own regulations require it. It is therefore conceivable that such a requirement might be implemented in this circuit. Thus, although the failure to consider the VA determination may not be error, it would be prudent to address the VA determination on remand. *Bird v. Commissioner of Social Sec. Admin.*, 699 F.3d 337, 345 (4th Cir. 2012) ("we hold that a VA disability determination must be accorded substantial weight in Social Security disability proceedings."); *McLeod v. Astrue,* 640 F.3d 881, 886 (9th Cir. 2011) ("Even though it is not binding or conclusive, the VA disability rating has to be considered. The ALJ did not mention it in her decision and did not consider it."); *Grogan v. Barnhart,* 399 F.3d 1257, 1262 (10th Cir. 2005) ("ALJs need not give 'great weight' to a VA disability determination if they adequately explain the valid reasons for not doing so."); *Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir. 2001) (per curiam) (VA determination "is evidence that the ALJ must consider and explain why he did not find it persuasive."); *Morrison v. Apfel,* 146 F.3d 625, 628 (8th Cir. 1998) ("We agree with other courts that findings of disability by other federal agencies, even though they are not binding on an ALJ, are entitled to some weight and must be considered in the ALJ's decision. . . . We are fortified in this conclusion by the fact that the Social Security Administration has given this very instruction to its adjudicators.")

3

### B. Credibility Determination

Plaintiff next argues that the ALJ erred by making a somewhat common error in his determination of the Plaintiff's credibility. Specifically, the ALJ found that the Plaintiff's allegations about his limitations were only "partially credible." (Tr. 38.) They were not fully credible, apparently, because (the ALJ reasoned) the claimant was capable of attending to his personal hygiene, doing occasional laundry, doing dishes, preparing meals and walking to get the mail at the end of his driveway.

An ALJ's credibility determination is entitled to deference, and will not be overturned unless it is "patently wrong." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). A court is not allowed to reweigh the facts or reconsider the evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). But when a credibility finding rests on "objective factors or fundamental implausibilities," rather than on a claimant's demeanor or other subjective factors, a court has greater leeway to evaluate the ALJ's determination. *Schomas v. Colvin,* 732 F.3d 702, 708 (7th Cir. 2013).

As has been pointed out before, the fact that a given claimant might be able to do the dishes or fix a meal does not really speak very well to the question of whether he could work in a traditional job. To be disabled, the law does not require a claimant to be a paralyzed invalid who is completely helpless. Thus, we can expect that most or almost all claimants—particularly those whose applications are initially denied—will have some basic abilities, which typically include preparing meals, doing dishes, lifting five or ten pounds occasionally, and getting their mail. Thus, the fact that a given claimant can do these things does not undermine the claimant's credibility. "[A]lthough it is appropriate for an ALJ to consider a claimant's daily activities when evaluating their credibility . . . this must be done with care. We have repeatedly cautioned that a person's ability

4

to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Roddy v. Astrue,* 705 F.3d 631, 639 (7th Cir. 2013).

Thus, if the ALJ had stopped there, the case would need to be remanded for another credibility determination. But the government argues that the ALJ incorporated his assessment of the medical evidence into his credibility determination (or vice-versa). (Tr. 38.) Immediately following the single paragraph discussing the claimant's credibility, the ALJ begins his discussion of the medical evidence. For example, right after the credibility paragraph the ALJ notes that the claimant's headaches had improved with medication, and he discusses the reports from the claimant's physician and consulting psychologist. (*Id.*)

Although the government believes the ALJ's medical evidence discussion is supportive of the credibility determination, it is unclear whether that was the ALJ's intent. The ALJ did not mention credibility outside of the single paragraph in which he discounted credibility due to the claimant's daily activities. Instead, it appears that the discussion cited by the government in support of the credibility determination was simply the ALJ's general discussion of the medical evidence. It did not, in other words, play a role in the credibility determination. And even if that was the ALJ's intent, the ALJ and the government are not permitted to simply reverse-engineer the credibility determination by saying, in effect: the claimant was not disabled, therefore he was not fully credible. Such a process "puts the cart before the horse, in the sense that the determination of capacity must be based on the evidence, including the claimant's testimony, rather than forcing the testimony into a foregone conclusion." *Filus v. Astrue,* 694 F.3d 863, 868 (7th Cir. 2012).

5

In sum, it appears that the ALJ's credibility determination was limited to an inference that because the claimant was able to engage in very limited daily activities, his allegations were only "partially credible." (Tr. 38.) The daily activities cited, however, do not call into question the claimant's disability allegations. *Bjornson v. Astrue,* 671 F.3d 640, 647 (7th Cir. 2012); *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011). Accordingly, the case needs to be remanded.

## C. Incorporation of Moderate Limitations and Chronic Fatigue

Finally, Plaintiff argues that the ALJ failed to incorporate limitations in persistence and concentration into the hypothetical question to the vocational expert or the RFC finding. He also failed to incorporate the limitations relating to chronic fatigue syndrome, which the ALJ had found to be a "severe" impairment. (Tr. 35.) Plaintiff argues that the ALJ found these limitations earlier in his opinion but then failed to incorporate them into the RFC analysis.

But the ALJ did not actually find any moderate limitations in persistence and concentration. Instead, in steps 2 and 3, he stated that the claimant "has, at most, moderate difficulties" with persistence, concentration or pace. (Tr. 36.) Thus, the ALJ did not find "moderate difficulties"—he found "at most," moderate difficulties. His discussion indicates that the claimant might have some "mild concentration issues" that improved with medication, as well as some concentration problems due to medication. (*Id.*) But nowhere did the ALJ specifically conclude that these limitations were "moderate." Even if he had, the purpose of that analysis, in the context steps 2 and 3, was to assess whether the claimant's impairments were severe. They are explicitly *not* part of the RFC. Although the ALJ must consider the extent of these limitations in forming the RFC, he need not automatically incorporate them merely because he made a finding at step 2 of the analysis.

6

But Plaintiff is correct that the ALJ failed adequately to consider the impact of his chronic fatigue syndrome when formulating the RFC. At step 2, the ALJ had found chronic fatigue to be a severe impairment. A severe impairment is an impairment which significantly limits a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 404.921(a). By definition, therefore, the impairment has *some* impact on the claimant's ability to work. On remand, the ALJ should address the impact that chronic fatigue syndrome could be expected to have on Plaintiff's ability to work. *Rose v. Shalala,* 34 F.3d 13, 19 (1st Cir. 1994) ("The ALJ's hypothetical . . . impermissibly omitted any mention of a significant functional limitation arising from the fatigue symptoms associated with CFS."); *Vega v. Commissioner of Social Sec.,* 265 F.3d 1214, 1220 (11th Cir. 2001) ("Upon remand, the ALJ should pose a more thorough hypothetical question, including Vega's subjective complaints and her symptoms of CFS.")

## III. Conclusion

The decision of the Commissioner must be remanded for a rehearing pursuant to 42 U.S.C. § 405(g), sentence four.

**SO ORDERED** this   13th   day of March, 2014.

 s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court

7